UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                    :
UNITED STATES OF AMERICA,           :
                                    :
               -v-                  :        20cr608 (DLC)
                                    :
AQUILINO TORRES,                    :        OPINION AND ORDER
                                    :
                    Defendant.      :
                                    :
----------------------------------- X

APPEARANCES

For the Government:
David J. Robles
United States Attorney's Office for the Southern District of New
York
One Saint Andrew's Plaza
New York, NY 10007

For defendant Aquilino Torres:
Jennifer L. Brown
Federal Defenders of New York Inc.
52 Duane Street, 10th Floor
New York, NY 10007

DENISE COTE, District Judge:

On November 12, 2020, defendant Aquilino Torres was

indicted on one count of kidnapping, in violation of Title 18,

United States Code, Sections 1201(a)(1) and (b), and one count

of kidnapping of a minor, in violation of Title 18, United

States Code, Sections 1201(a)(1), (b), and (g).  On April 13,

2021, a grand jury returned a superseding indictment that

charged Torres with the aforementioned offenses, as well as one

count of stalking in violation of Title 18, United States Code,

Sections 2261A(2)(A) and 2261A(2)(B).  Torres' trial is scheduled for July.  In advance of trial, Torres has filed a motion to dismiss the indictment, a motion to preclude the proffered expert testimony of Dr. Chitra Raghavan, and a motion to exclude evidence related to Torres' prior criminal conviction that the Government seeks to introduce pursuant to Rule 404(b), Fed. R. Evid.  For the following reasons, Torres' motions are denied.

## Background

The following allegations are taken from the complaint and superseding indictment.

I.  Torres' Alleged Conduct

On October 5, 2020, Torres sent a series of threatening text messages to his romantic partner ("Victim-1").  Later that day, Torres approached Victim-1 and threatened to kill her son ("Minor Victim-1") if they did not come with him.  Torres took them to a motel in the Bronx, New York, instructed Victim-1 to rent a room for one night, and again threatened to kill Minor Victim-1 if Victim-1 did not comply.  Torres, Victim-1, and Minor Victim-1 entered a room at the motel, where Torres struck Victim-1 and Minor Victim-1 and forced Victim-1 to have sex with him.

2

The following day, Torres used a mobile payment application to send Victim-1 money and instructed Victim-1 to use that money to rent a room in an apartment in Washington Heights, New York. After Victim-1 arranged to rent the room, Torres ordered Victim-1 to order an Uber to transport him, Victim-1, and Minor Victim-1 to the apartment.  Victim-1 did so.

On October 7, Torres tied Victim-1's hands to a bed frame in the Washington Heights apartment and told Victim-1 that he would kill Minor Victim-1 if she attempted to escape.  Between October 7 and October 10, 2020, Torres forced Victim-1 and Minor Victim-1 to stay in the Washington Heights apartment.  During this period, Torres repeatedly left and returned to the apartment.  Torres also received romantic text messages from Victim-1 during the period that she was confined to the apartment.

On October 10, Torres assaulted Victim-1 and Minor Victim-1 at the Washington Heights apartment.  Later that day, Torres left the apartment, leaving behind Victim-1's cell phone. Victim-1 and Minor Victim-1 then fled the apartment.  After they fled the apartment, Torres sent Victim-1 a series of threatening text messages, which included threats that he would go looking for Victim-1 and that he would post a nude photograph of Victim-1 on the internet.  Later that evening, Victim-1 was admitted to

a hospital, where she was diagnosed with a broken jaw.  Torres was arrested on November 3, 2020 and detained pending trial.  He was indicted on November 12, 2020.

## II.  The Government's Proposed Rule 404(b) Evidence

On December 1, 2020, in connection with its initial discovery production, the Government notified Torres that it intended at trial to offer evidence, pursuant to Rule 404(b), Fed. R. Evid., that Torres had been previously charged with kidnapping and assaulting an ex-girlfriend ("Victim-2").  The prior charges involved allegations that he confined Victim-2, who was pregnant at the time, to a room in his apartment between September 18, 2013 and October 10, 2013.  During that period, Torres allegedly bound, assaulted, and threatened Victim-2.  Victim-2 was located, and Torres was arrested, on October 10, 2013.  He was charged in New York state court with unlawful imprisonment, assault with a dangerous instrument, sexual assault, and aggravated harassment.

On September 16, 2014, Torres pleaded guilty to assaulting Victim-2, in violation of New York Penal Law Section 120.05(2).  This provision prohibits, "[w]ith intent to cause physical injury to another person, [causing] such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law § 120.05(2).  During his guilty

plea allocution in New York state court, Torres acknowledged that he "repeatedly struck" Victim-2 with a belt.  He was sentenced to four and a half years' imprisonment.  Torres was released to parole supervision on August 9, 2019 and remained subject to supervision when he was arrested for the instant offense.[1]

On April 2, 2021, the Government informed Torres that it intends to offer "evidence concerning the defendant's prior commission of an unlawful imprisonment and physical and sexual assault of" Victim-2.  It explained it would do so through "testimony, sworn statements made by [Torres] in prior court proceedings, and photographs of Victim-2's injuries."

III. The Government's Proposed Expert Testimony

On March 8, 2021, the Government notified Torres, pursuant to Rule 16(a)(1)(G), Fed. R. Crim. P., that it intended to call Dr. Chitra Raghavan as an expert witness at trial.  Dr. Raghavan is a professor of psychology at John Jay College of Criminal Justice in New York City whose academic work focuses on issues related to domestic abuse and coercive control.  The Government

---

[1] The Court takes judicial notice of information regarding Torres' release made publicly available by the New York State Department of Corrections and Community Supervision as a "relevant matter[] of public record," Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012), that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b)(2).

told Torres that Dr. Raghavan would be expected to provide

background testimony on

> stalking and control methods in relationships
> involving domestic violence, including the
> psychological relationship between the abuser and the
> victim; the use and impact of coercion and other
> control methods by the abuser; and why victims of
> domestic violence often do not feel free to leave the
> relationship or the locations that they share with
> their abuser.

Torres objected to the adequacy of the Government's Rule 16

disclosure regarding Dr. Raghavan later that day, and on March

16, the Government provided a supplemental Rule 16 notice

stating that Dr. Raghavan is expected to testify about "coercive

control" in abusive relationships and its effect on the

"victim's decision-making and free will."  On April 9, Torres

again objected to the Government's disclosure.

IV.  Procedural History

On April 23, Torres filed motions to dismiss the

indictment, to preclude Dr. Raghavan's testimony, and to exclude

the Government's Rule 404(b) evidence.  The motions became fully

submitted on April 30.

## Discussion

I.   Motion to Dismiss the Indictment

Torres has moved to dismiss his indictment pursuant to Rule

12, Fed. R. Crim. P.  An indictment "must be a plain, concise,

and definite written statement of the essential facts

constituting the offense charged" and must, for each count, "give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient under Rule 7 and the Fifth Amendment "as long as it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Wedd, 993 F.3d 104, 120 (2d Cir. 2021) (citation omitted).

To satisfy these requirements, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Id. (citation omitted).  Accordingly, an indictment must only describe the "core of criminality to be proven at trial," or the "essence of a crime, in general terms." United States v. Daugerdas, 837 F.3d 212, 225 (2d Cir. 2016) (citation omitted).  It need not describe "the particulars of how a defendant effected the crime." Id.

Under this standard, dismissal of an indictment is a "drastic remedy that should be utilized with caution and only in extreme cases." United States v. Walters, 910 F.3d 11, 26 (2d

Cir. 2018) (citation omitted).  When considering a motion to dismiss an indictment, "the facts alleged by the government must be taken as true."  United States v. Velastegui, 199 F.3d 590, 592 n.2 (2d Cir. 1999).

Torres moves to dismiss the indictment on several grounds. He argues first that the indictment fails to allege an adequate basis for federal jurisdiction in his case, as required by the federal statutes under which he has been indicted.  See 18 U.S.C. §§ 1201(a)(1-5) (setting forth five potential bases for federal jurisdiction that serve as disjunctive elements of the federal kidnapping statute, including the use of "any means, facility, or instrumentality of interstate or foreign commerce" during the commission of the kidnapping); 18 U.S.C. § 2261A(2)(describing the federal crime of stalking as, inter alia, "us[ing] . . . [a] facility of interstate or foreign commerce" to engage in a "course of conduct" prohibited by the statute).  He further argues that, even if the Government has set forth an adequate jurisdictional basis for the indictment, the statutes under which he has been indicted are unconstitutional because they exceed Congress' power under the Commerce Clause.  Finally, he argues that the federal kidnapping statute under which he has been indicted is unconstitutionally

vague.  For the following reasons, all of these arguments fail,
and the motion to dismiss the indictment is denied.

A.   Federal Jurisdiction

The indictment alleges an adequate jurisdictional basis for
Torres' kidnapping and stalking charges because it alleges that
Torres used a cellular telephone during the crimes charged in
the indictment.[2]  The Second Circuit has held that, where a
defendant uses the telephone network during the course of his
crimes, that defendant has used a facility of interstate
commerce, even if the defendant has made only intrastate
communications using the telephone network.  United States v.
Perez, 414 F.3d 302, 304-05 (2d Cir. 2005).[3]  The same conclusion
is appropriate here.

_____

[2] The indictment also alleges that Torres confined the victims
for more than twenty-four hours.  Under the statute, "the
failure to release the victim within twenty-four hours after he
shall have been unlawfully seized . . . shall create a
rebuttable presumption that such person has been transported in
interstate or foreign commerce," thereby satisfying the
jurisdictional element of the kidnapping statute.  18 U.S.C. §
1201(b).  Torres disputes the validity and applicability of this
presumption.  The Government concedes that this presumption,
standing alone, cannot satisfy the jurisdictional element of the
statute at trial, and does not intend to rely on it at trial.
This dispute is academic, in any event, because Torres' alleged
use of a cell phone during the offenses creates an independent
basis for federal jurisdiction that is valid for the reasons
described in this Opinion.

[3] Perez involved the jurisdictional provision of the federal
murder-for-hire statute, 18 U.S.C. § 1958, but several courts in
this District have applied the Second Circuit's holding in Perez

B.   Commerce Clause

Torres' argument that the federal kidnapping and stalking statutes exceed Congress' power under the Commerce Clause is similarly foreclosed by Supreme Court and Second Circuit precedent.  Under the Commerce Clause, "Congress may regulate the use of the channels of interstate commerce" and is "empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities."  United States v. Lopez, 514 U.S. 549, 558 (1995).

In this case, the federal jurisdictional nexus involves the use of the telephone network, an instrumentality of interstate commerce.  Congress may therefore criminalize certain intrastate uses of the telephone network, such as Torres' alleged use of the telephone network to commit the crimes alleged in the indictment, via its power to "regulate and protect the instrumentalities of interstate commerce."  Id.; see also United States v. Gil, 297 F.3d 93, 100 (2d Cir. 2002) (mail fraud statute may be constitutionally applied to intrastate mailings

---

in kidnapping cases and held that the jurisdictional element of the federal kidnapping statute is satisfied when the defendant used the telephone network during the crime.  See, e.g., United States v. Pizarro, No. 17cr151 (AJN), 2019 WL 3406603, at *6 (S.D.N.Y. July 29, 2019); United States v. Ramos, No. 12cr556 (LTS), 2013 WL 1932110, at *3-4 (S.D.N.Y. May 8, 2013), aff'd, 622 Fed.Appx. 29 (2d Cir. 2015).

sent via private interstate carriers because private interstate
carriers are instrumentalities of interstate commerce).[4]  Torres'
Commerce Clause challenge is therefore unavailing.

C.   Vagueness

Finally, Torres brings a vagueness challenge to the federal
kidnapping statute.[5]  A criminal law is void for vagueness if it
does not "define the criminal offense with sufficient
definiteness that ordinary people can understand what conduct is
prohibited and in a manner that does not encourage arbitrary and
discriminatory enforcement."  United States v. Napout, 963 F.3d
163, 181 (2d Cir. 2020) (citation omitted).  Statutes must
"define regulated conduct with sufficient definiteness that
ordinary people can understand," but the void for vagueness
doctrine "does not demand meticulous specificity, recognizing
that language is necessarily marked by a degree of imprecision."
Libertarian Party of Erie Cty. v. Cuomo, 970 F.3d 106, 126 (2d

---

[4] Other courts in this District have rejected similar Commerce
Clause challenges to the federal kidnapping statute.  See, e.g.,
United States v. Brown, No. 13cr345 (LGS), 2014 WL 4473372, at
*4 (S.D.N.Y. Sept. 10, 2014).

[5] Torres also argues that the statute, which prohibits kidnapping
"for ransom or reward or otherwise," 12 U.S.C. 1201(a), should
be read to require the Government to prove that Torres kidnapped
the victims for pecuniary gain.  As Torres recognizes, however,
this argument has been squarely rejected by the Second Circuit
and the Supreme Court.  United States v. Healy, 376 U.S. 75, 81
(1964); United States v. Cavallero, 553 F.2d 300, 304 (2d Cir.
1977).

Cir. 2020) (citation omitted).  Where, as here, a criminal
statute does not present First Amendment concerns, "courts
generally view vagueness challenges to a statute as applied to
the defendant's case."  United States v. Farhane, 634 F.3d 127,
138 (2d Cir. 2011).  In the context of an as-applied vagueness
challenge, "one whose conduct is clearly proscribed by the
statute cannot successfully challenge it for vagueness."  United
States v. Nadirashvili, 655 F.3d 114, 122 (2d Cir. 2011)
(citation omitted).

Applying these principles, Torres' vagueness challenge to
the federal kidnapping statute lacks merit.  Torres points to
potential ambiguities at the fringes of the kidnapping statute,
describing potential applications where ordinary people may not
be aware that certain forms of ostensibly innocuous conduct
could leave them vulnerable to prosecution under the federal
kidnapping statute.  But here, Torres' alleged conduct "falls
within the core of the statute's prohibition."  Farhane, 139
F.3d at 139 (citation omitted).  He is alleged to have used
force and threats of force to confine his romantic partner and
her son against their will, at one point using physical
restraints to confine one of the victims.  His vagueness
challenge thus fails even if he has identified potential
"unfettered latitude that law enforcement officers and

factfinders might have in other, hypothetical applications of the statute." Id. at 139-40 (citation omitted).

II.  Motion to Preclude the Expert Testimony of Dr. Raghavan

Torres has moved to preclude the expert testimony of Dr. Raghavan pursuant to Rules 403 and 702, Fed. R. Evid.  For the following reasons, the motion is denied.

A.   Legal Standard

Federal Rule of Evidence 702 governs the admission of expert testimony.  Rule 702 allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify, "in the form of an opinion or otherwise," if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under this rule, the trial judge must first address "the threshold question of whether a witness is qualified as an expert by knowledge, skill, experience, training, or education to render his or her opinions." Nimely v. City of New York, 414 F.3d 381, 396 n.11 (2d Cir. 2005) (citation omitted).

13

If that question is answered in the affirmative, the trial judge has a "gatekeeping role", requiring her to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 597 (1993).  In exercising the "gatekeeping role" established in Daubert, a district court should consider the specific criteria for expert testimony set forth in Rule 702.  In re Mirena IUS Levonorgestrel-Related Products Liability Litigation (No. II), 982 F.3d 113, 123-24 (2d Cir. 2020).  Otherwise, the reliability inquiry is "fluid and will necessarily vary from case to case." Id. at 123 (citation omitted).  While Daubert sets forth factors for the district court to consider that may be helpful in certain cases,[6] there is no "definitive checklist or test" for reliability, as there are "there are many different kinds of experts, and many different kinds of expertise." United States v. Romano, 794 F.3d 317, 330 (2d Cir. 2015) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999)).  Accordingly, a district court has "broad

---

[6] These factors are "(1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." Mirena, 982 F.3d at 123 (quoting Daubert, 509 U.S. at 593-94).

discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002).[7]

In conducting the Daubert analysis, a "district court must focus on the principles and methodology employed by the expert." Amorgianos, 303 F.3d at 266.  A court should exclude expert testimony that is "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached."  Id. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596.

Once the district court has determined that a witness is qualified to testify as an expert and that the expert testimony is reliable, the court must "make a third inquiry: whether the expert's testimony (as to a particular matter) will assist the trier of fact."  Nimely, 414 F.3d at 397 (citation omitted).  If expert testimony "usurps . . . the role of the trial judge in instructing the jury as to the applicable law or the role of the

---

[7] That discretion extends to the decision as to whether to hold an evidentiary hearing before admitting expert testimony; a district court need not conduct a separate evidentiary hearing to adequately perform its gatekeeping role under Daubert. United States v. Williams, 506 F.3d 151, 161 (2d Cir. 2007).

jury in applying that law to the facts before it," it is
inadmissible.  <u>Id</u>. (citation omitted).  Similarly, if the
purported expert testimony "concerns matters that the average
juror is . . . capable of understanding on his or her own," it
is also inadmissible.  <u>United States v. Mejia</u>, 545 F.3d 179, 194
(2d Cir. 2008).

If expert testimony satisfies the requirements of Rule 702
and <u>Daubert</u>, the expert testimony may nonetheless be excluded.
As is the case for all relevant evidence, a court may exclude
expert testimony "if its probative value is substantially
outweighed by a danger of . . . unfair prejudice, confusing the
issues, misleading the jury, undue delay, wasting time, or
needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

B.   Application

At the first stage of the analysis described above, a court
must consider whether the proposed expert witness has the
requisite qualifications to testify as an expert.  Dr. Raghavan
is a tenured professor of psychology with a doctorate in the
field.  Her <u>curriculum vitae</u> indicates that she has published
dozens of peer-reviewed book chapters and academic journal
articles on issues related to domestic abuse and coercive
control.  She has also given a series of lectures on related
topics, including to judges and prosecutors in New York, and has

16

taught undergraduates and graduate psychology students on issues related to the subject of her potential testimony in this case. She has testified as an expert regarding domestic abuse in several courts, including courts in this District.  While Torres claims that the "bulk of her expertise appears to relate to sex trafficking," as opposed to the domestic abuse issues in this case, this argument is belied by Dr. Raghavan's curriculum vitae, which indicates extensive academic and professional experience related to domestic abuse and coercive control.  In sum, Dr. Raghavan's experience is more than sufficient to qualify her as an expert on domestic violence and coercive control.

At the second stage of the analysis, the Court must consider whether the proposed testimony is based on a reliable methodology.  Here, Dr. Raghavan's expert testimony regarding domestic abuse and coercive control will be based on her extensive body of qualitative psychological research on those phenomena, as well as an even larger corpus of qualitative research conducted by other researchers in the field that involves similar methodology and standards.  This research has been published in peer-reviewed academic journals.  As Daubert instructs, a methodology is more likely to be reliable if it has been subject to peer review and if it has gained general

acceptance in the relevant scientific community.[8]  509 U.S. at 593-94.  Under the circumstances, then, Dr. Raghavan's testimony is reliable.

Torres disputes the reliability of Dr. Raghavan's methodology because it is based on qualitative research that involves interviews with individuals who have been victimized by domestic abuse and coercive control.  He argues that Dr. Raghavan's testimony will therefore simply transmit the inadmissible hearsay testimony of these interview subjects to the jury, in violation of Fed. R. Evid. 703.  While it is true that Rule 703 does not permit "a party [to] call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony," Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 136

---

[8] Dr. Raghavan's qualitative methodology is not amenable to consideration under the other Daubert factors, which require a court to consider whether the methodology "can be (and has been) tested" and the methodology's "known or potential rate of error."  509 U.S. at 593-94.  As noted above, however, the Daubert inquiry is "fluid and will necessarily vary from case to case," Mirena, 982 F.3d at 123, so the inapplicability of these factors need not preclude the conclusion that Dr. Raghavan's methodology is reliable.  Indeed, the Second Circuit has recognized that social science research, like Dr. Raghavan's, "cannot have the exactness of hard science methodologies, and expert testimony need not be based on statistical analysis in order to be probative."  United States v. Joseph, 542 F.3d 13, 21 (2d Cir. 2008), abrogated on other grounds by United States v. Ferguson, 676 F.3d 260, 276 n.14 (2d Cir. 2011) (citation omitted).

(2d Cir. 2013) (citation omitted), Torres' argument that Rule 703 prohibits Dr. Raghavan's testimony is nonetheless unavailing.  "An expert witness may base opinions on otherwise inadmissible facts or data," such as the alleged hearsay statements of the interview subjects, "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."  United States v. Dukagjini, 326 F.3d 45, 51 (2d Cir. 2003) (citation omitted). Dr. Raghavan's research methodology may be based on qualitative interviews that involve listening to the statements of domestic abuse victims, but her testimony will involve the synthesis and interpretation of those statements, rather than the mere conveyance of those statements to the jury.[9]  That is sufficient to satisfy Rule 703.

The proposed testimony is also likely to assist the jury. The Government avers that Dr. Raghavan will testify about coercive control, which is a psychological dynamic often seen in

---

[9] Other courts in this District have found similar expert testimony regarding domestic abuse based on qualitative research to be reliable.  See, e.g., United States v. Kidd, 385 F.Supp.3d 259, 263-64 (S.D.N.Y. 2019) (permitting the expert testimony of Dr. Sharon Cooper, a colleague of Dr. Raghavan who relies on a similar methodology).  The Honorable Paul Engelmeyer of this Court recently concluded that Dr. Raghavan's expert testimony was methodologically reliable and rejected a Daubert challenge to her testimony.  Transcript of Conference, United States v. Randall, No. 19cr131 (PAE) (S.D.N.Y. Feb. 25, 2020), ECF No. 335.

abusive relationships that leads an abuse victim to behave in counterintuitive ways, such as by declining to take opportunities to leave an abusive situation or by expressing gratitude to an abuser.  The Government intends to present evidence that, on several occasions, Torres left Victim-1 alone in the apartment, but that Victim-1 did not use those opportunities to flee.  The Government also intends to present evidence that Victim-1 sent Torres romantic text messages during the events at issue in this case.  Dr. Raghavan's testimony will help the jury contextualize that seemingly counterintuitive behavior and assess whether Victim-1 was held against her will, an element of the kidnapping statute.  As the Second Circuit has noted, courts regularly uphold the "admission of expert testimony to explain conduct not normally familiar to most jurors."  Joseph, 542 F.3d at 22.

Contrary to Torres' assertions, this testimony will not bolster the credibility of Victim-1 or the Government's factual narrative or instruct the jury regarding the ultimate issues in the case.  Dr. Raghavan has not interviewed Victim-1, and her testimony will focus on the generalized dynamics of coercive control rather than the specifics of the relationship between Torres and Victim-1.  Dr. Raghavan will not testify that Victim-1 was kidnapped in violation of federal law, or even that

Victim-1 was subject to coercive control.  The ultimate issues
in the case remain with the jury.

Finally, the proposed testimony's probative value will not
be substantially outweighed by its potential to unfairly
prejudice the jury.  Torres argues, based on transcripts of Dr.
Raghavan's prior testimony in other cases provided by the
Government, that Dr. Raghavan is likely to offer inflammatory
testimony regarding the relationship between women and their
abusers.  He notes that, in prior cases, Dr. Raghavan has
testified about men who engage in sex trafficking of abused
women, that some men abuse women by manipulating them into drug
addiction, that some abusers deprive their victims of
necessities such as medication and food, and that some abused
women form "trauma bonds" with their abusers.  He contends that
this testimony is likely to prejudice the jury by suggesting
that Torres is akin to men who engage in those behaviors, which
are not alleged in this case.  In the context of this case,
however, Dr. Raghavan's testimony regarding the generalities of
domestic abuse will be no more inflammatory or prejudicial than
the other evidence -- including allegations of kidnapping,
physical and sexual abuse, and threats of deadly violence --
that will be presented to the jury.  In any event, the parties

may litigate the appropriate scope of Dr. Raghavan's testimony in their motions in limine.

In sum, Dr. Raghavan is qualified to testify as an expert, her testimony is based on a reliable methodology, her testimony will assist the jury, and her testimony will not be unfairly prejudicial.  Accordingly, Torres' motion to preclude Dr. Raghavan's testimony is denied.  Torres may, of course, use at trial the "traditional and appropriate means" of undermining Dr. Raghavan's expert testimony, such as "[v]igorous cross-examination" and "presentation of contrary evidence."  Daubert, 509 U.S. at 596.

III. Motion to Exclude the Rule 404(b) Evidence

The Government anticipates introducing evidence of Torres' 2013 New York state court conviction for assault in the second degree, pursuant to Rule 404(b), Fed. R. Evid ("Rule 404(b) evidence").  Torres has moved to exclude that evidence.  He emphasizes that, while he pleaded guilty in 2014 to repeatedly striking Victim-2 with a belt with intent to cause physical injury, he was not convicted of imprisoning or sexually assaulting Victim-2.  His motion is denied.

A.   Legal Standard

The Federal Rules of Evidence prohibit the admission of "[e]vidence of [a party's] other crime, wrong or act . . . to

prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  But evidence related to a criminal defendant's other criminal conduct "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).[10]

"The Second Circuit's 'inclusionary rule' allows the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence."  United States v. Lyle, 919 F.3d 716, 736 (2d Cir. 2019) (citation omitted). Specifically, a "court can . . . admit evidence of prior acts as probative of knowledge and intent if the evidence is relevant to the charged offense, i.e., if there is a similarity or connection between the charged and uncharged acts."  United States v. Dupree, 870 F.3d 62, 76 (2d Cir. 2017).  In

---

[10] The Federal Rules of Evidence also require that the Government provide "reasonable notice" to the defense regarding the Government's intent to make use of such evidence at trial.  Fed. R. Evid. 404(b)(3).  Such notice must be made in writing prior to trial and must "articulate . . . the permitted purpose for which the [Government] intends to offer the evidence."  Id. Torres does not dispute that the Government complied with the Rule 404(b)(3) notice requirement.

determining whether Rule 404(b) evidence should be admitted, a court should consider whether "(1) the evidence [is] offered for a proper purpose; (2) it [is] relevant to a disputed trial issue; [and] (3) its probative value is substantially outweighed by its possible prejudice."[11]  United States v. Kadir, 718 F.3d 115, 123 (2d Cir. 2013) (citation omitted).

B.   Application

The Government intends to offer the evidence of the 2013 case for a proper purpose and to address issues on which the Government bears the burden of proof.  The operative indictment in this case, a superseding indictment returned by the grand jury on April 13, 2021, charges Torres with three counts.

The first count charges Torres with the kidnapping of Victim-1, in violation of the federal kidnapping statute, 18 U.S.C. §§ 1201(a)(1) and 1201(b).  Section 1201(a) prohibits

> unlawfully seiz[ing], confin[ing], inveigl[ing], decoy[ing], kidnap[ping], abduct[ing], or carr[ying] away and hold[ing] for ransom or reward or otherwise any person . . . [when] the offender . . . uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.

18 U.S.C. § 1201(a).

---

[11] District courts are also instructed to consider whether a limiting instruction concerning the evidence may be appropriate. The parties shall confer and propose a limiting instruction prior to the final pretrial conference on June 24.

In order to prove that Torres violated the federal
kidnapping statute with respect to Victim-1, the Government must
prove, beyond a reasonable doubt, that Torres imposed "unlawful
physical or mental restraint [on Victim-1] for an appreciable
period against [Victim-1's] will and with a willful intent so to
confine [Victim-1]."  Chatwin v. United States, 326 U.S. 455,
460 (1946).

Count Two of the indictment charges Torres with the
kidnapping of Minor Victim-1, the son of Victim-1, in violation
of 18 U.S.C. §§ 1201(a)(1), 1201(b), and 1201(g).  Section
1201(g) imposes a twenty year mandatory minimum sentence for
violations of § 1201(a)(1) where "the victim . . . has not
attained the age of eighteen years" and "the offender . . . has
attained [the age of eighteen years] . . . and is not a parent;
a grandparent; a brother; a sister; an aunt; an uncle; or an
individual having legal custody of the victim."  18 U.S.C. §
1201(g).

Count Three of the indictment charges Torres with stalking
Victim-1, in violation of 18 U.S.C. §§ 2261A(2)(A) and
2261A(2)(B).[12]  Section 2261A(2)(A) prohibits

> with the intent to kill, injure, harass, intimidate,
> or place under surveillance with intent to kill,

---

[12] Count Three also charges Torres under 18 U.S.C. §§ 2261(b)(3)
and 2265(A).  These sections set forth the operative penalties
for a violation of § 2261A.

injure, harass, or intimidate another person, us[ing]
the mail, any interactive computer service or
electronic communication service or electronic
communication system of interstate commerce, or any
other facility of interstate or foreign commerce to
engage in a course of conduct that places that person
in reasonable fear of the death of or serious bodily
injury to a person.

18 U.S.C. § 2261A(2)(A).

Section 2262A(2)(B) prohibits, with the same intent and
jurisdictional requirement, "engag[ing] in a course of conduct
that causes, attempts to cause, or would be reasonably expected
to cause substantial emotional distress to a [victim]," an
"immediate family member" of the victim, or "a spouse or
intimate partner" of the victim.   18 U.S.C. § 2262A(2)(B).

The Government reasons that Torres' knowledge and intent
will play a central role in this prosecution.   Torres does not
suggest that he will be conceding at trial either the issue of
identity or his knowledge and intent.   In fact, based on his
post-arrest statement, it appears that Torres will contend at
trial that Victim-1 and Minor Victim-1 were free to leave the
motel and apartment where they were housed during the events at
issue in this case and that he did not intend to confine or
kidnap them.

The Government correctly contends that evidence related to
Torres' 2013 criminal case -- which, like the allegations
involved in this case, involved his confinement of a romantic

partner against her will by force and threats of force -- is
properly admitted to show Torres intentionally confined Victim-1
and Minor Victim-1 to the motel and apartment by force and
threats of force, and that they were not present in those
locations by their own volition.  This evidence is therefore
appropriately admitted to establish that Torres knowingly and
intentionally engaged in conduct that violated §§ 1201 and
2261A(2).  "Where a defendant claims that his conduct has an
innocent explanation, prior act evidence is generally admissible
to prove that the defendant acted with the state of mind
necessary to commit the offense charged."  United States v.
Pascarella, 84 F.3d 61, 69 (2d Cir. 1996) (citation omitted).

     Torres' arguments to the contrary are unavailing.  Torres
notes that, where the Government offers Rule 404(b) evidence
"for the purpose of establishing the defendant's knowledge or
intent," the Government must "identify a similarity or
connection between the two acts that makes the prior act
relevant to establishing knowledge of the current act."  United
States v. McCallum, 584 F.3d 471, 475 (2d Cir. 2009) (citation
omitted).  Torres argues that there is an insufficient
similarity between the 2013 case and the crimes charged in the
indictment because the two incidents involved different victims,
occurred in different locations, and involved assaults that were

conducted in different ways.  This argument is unconvincing.
The 2013 and 2020 incidents are sufficiently similar to have
significant probative value regarding Torres' intent and
knowledge in 2020.  Both incidents involved the alleged
confinement of romantic partners against their will, similar
abuse of those partners, and similar threats in connection with
the incidents.  This is enough to render the Government's
proposed Rule 404(b) evidence admissible.  The similarity or
connection requirement does not necessitate exact overlap
between the facts of the prior act and the current case.[13]

Torres' argument that the 2013 case is too remote in time
to be relevant is also unconvincing.  While the Second Circuit
has held that "[t]he length of time between the events" is

---

[13] The Government and Torres also dispute whether the
Government's Rule 404(b) evidence is admissible to prove Torres'
identity under a modus operandi theory.  The standard for
admission of Rule 404(b) evidence to prove identity is higher
than the standard used when such evidence is introduced to prove
knowledge or intent: the Government must show that the prior act
and the acts alleged in the instant case share "idiosyncratic
details."  United States v. Sliker, 751 F.2d 477, 487 (2d Cir.
1984).  The Government bears the burden of proving that the
defendant was the person who is accused of committing the crimes
charged in the indictment.  Should the defendant not explicitly
remove this issue from the jury, the Court will address whether
the evidence of the 2013 case is admissible on the issue of
identity as well.  See United States v. Siddiqui, 699 F.3d 690,
702 (2d Cir. 2012) ("A defendant may . . . forestall the
admission of Rule 404(b) evidence by advancing a theory that
makes clear that the object the 404(b) evidence seeks to
establish, while technically at issue, is not really in
dispute.").

relevant to the analysis of the "potential probative value of
the prior conviction," United States v. Garcia, 291 F.3d 127,
138 (2d Cir. 2002), it has never set forth a bright-line rule
regarding the age at which prior bad acts become presumptively
inadmissible by virtue of their remoteness in time.  The 2013
case involves events occurring eight years prior to the crimes
alleged in this case, and the Second Circuit has upheld the
admission of Rule 404(b) evidence related to knowledge or intent
when that evidence is a criminal conviction of similar or
greater vintage.  See, e.g., United States v. Martino, 759 F.2d
998, 1005-06 (2d Cir. 1985) (eleven-year-old conviction); United
States v. Terry, 702 F.2d 299, 316 (2d Cir. 1983) (twenty-year-
old conviction).  Moreover, it is noteworthy that the events in
2020 apparently occurred only shortly after Torres' release from
prison after serving his four and a half year sentence on the
2013 case.

Finally, the Rule 403 factors weigh in favor of admitting
the evidence.  Torres claims that the introduction of the
evidence would require a "trial within a trial" that would
produce undue delay and juror confusion.  The Government states
that it intends to introduce the evidence via a single fact

witness, a transcript of Torres' 2013 guilty plea allocution,[14] and photographs of Victim-2's injuries.  This relatively streamlined proof of the 2013 incident does not suggest that it will result in confusion.  Any addition to the length of the trial will not be material and will not substantially outweigh the probative value of the evidence.

Further, Torres' arguments regarding unfair prejudice from the introduction of the Rule 404(b) evidence may be rejected. Torres argues that the evidence, which includes "grisly" photographs of the injuries to Victim-2, will be unfairly prejudicial.  But Rule 403 does not preclude the admission of evidence that may be prejudicial: it prohibits only the admission of evidence that causes unfair prejudice, or "that which might dispose a jury to render a verdict for reasons unrelated to the merits of the case."  Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 150 (2d Cir. 2010).  As discussed above, the proposed Rule 404(b) evidence is highly relevant to the merits of the case against Torres.  The Government also avers that it will not provide unnecessary lurid details regarding the 2013 case to the jury.  Moreover, concerns regarding the potential

---

[14] The Government notes that, if it cannot reach an agreement with Torres to stipulate to the admission of the allocution transcript, it may need to call an additional witness for the sole purpose of authenticating the transcript.

prejudicial effect of Rule 404(b) evidence are "mitigated where the evidence is no more sensational or disturbing than the crimes with which the defendant is charged." United States v. Cummings, 858 F.3d 763, 778 (2d Cir. 2017) (citation omitted). Given the similarities between the 2013 case and the crimes charged in the indictment, the jury will hear similarly inflammatory allegations about Torres' conduct regardless of whether the Government's Rule 404(b) evidence is presented. Therefore, it cannot be concluded at this stage that the Rule 404(b) evidence would be unfairly prejudicial.  In the context of the parties' motions in limine, Torres will have an opportunity to address the Government's specific evidence regarding the 2013 case, including the "grisly" photographs of Victim-2, and the issue of whether that evidence may be presented to the jury.

## Conclusion

Torres' motions to dismiss the indictment, to preclude the expert testimony of Dr. Raghavan, and to exclude the Government's Rule 404(b) evidence are denied.

Dated:    New York, New York
          May 13, 2021

_____
DENISE COTE
United States District Judge